**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2738-21

M.A.,[1]

     Plaintiff-Appellant,

v.

P.B.,

     Defendant-Respondent.

_____

Argued December 5, 2023 – Decided August 15, 2024

Before Judges Berdote Byrne and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0485-21.

Michael Confusione argued the cause for appellant (Hegge & Confusione, LLC, attorneys; Michael Confusione, of counsel and on the briefs).

---

[1] We use initials to protect the parties' privacy interests. R. 1:38-3(d)(3).

Sierra K. Chandler argued the cause for respondent (Law Office of Rajeh A. Saadeh, LLC, attorneys; Rajeh A. Saadeh and Sierra K. Chandler, on the brief).

PER CURIAM

Plaintiff appeals from various provisions of a dual judgment of divorce (DJOD) entered on March 30, 2022, following a four-day trial. Plaintiff primarily contends the Family Part erred in its imputation of income, requiring the vacation of the child support, alimony, and equitable distribution awards. After carefully reviewing the record, we affirm substantially for the reasons expressed by Judge John P. McDonald in his comprehensive and well-reasoned opinion. We add the following expansions to his findings.

I.

Plaintiff and defendant were married February 10, 2006, and share one son. Plaintiff filed a complaint for divorce in December 2020 and defendant filed an answer and counterclaim. At the time of the divorce proceeding, plaintiff was approximately forty-nine years old, and defendant was thirty-four years old.

Throughout the marriage plaintiff was the primary wage earner, working as a semi-trailer truck driver while defendant cared for their son at home. Between 2011 and 2014, plaintiff worked as a mechanic and an Uber driver due to a downturn in the trucking industry. Plaintiff alleged his sister assisted with

A-2738-21

expenses and loaned plaintiff money to supplement his reduced income. Additionally, the family resided in a home owned by plaintiff's sister from 2014 to 2020. By then, plaintiff alleged he owed his sister approximately $75,000 in rent and living expenses and had repaid approximately $30,000 to $35,000 of the debt.

In January 2021, after plaintiff moved out of the family residence and an award of pendente lite support had been established, plaintiff lost his commercial driver's license (CDL) for failing his Department of Transportation (DOT) physical due to a psychiatric evaluation. He eventually obtained a new job as a security officer.

The divorce trial began in November 2021. Defendant testified on her own behalf and plaintiff, his mother, and sister testified on his behalf.

Plaintiff testified he worked as a truck driver from 2006 until the end of 2020 when he failed his DOT-physical and lost his CDL. He explained that his former trucking employer provided him with an opportunity to obtain the necessary medical approval to retain his position, but his physician refused, and wanted the DOT's doctor to assume that responsibility. Plaintiff admitted he earned $130,000 in 2019, $90,000 in 2020, and $28,000 in 2021, which was supported by plaintiff's case information statements (CIS) and tax returns.

Defendant testified that after plaintiff filed for divorce, she relied upon state and charitable assistance to support herself and their son. Aside from this assistance, defendant began working at a school cafeteria in January 2022 earning $13.20 hourly. She testified she maintained a part-time schedule because it aligned with their son's school schedule and permitted her to be with him after school. She also explained she was seeking to improve her education and English-language skills to obtain better employment opportunities.

After trial, the family court provided an oral opinion wherein it concluded plaintiff was not credible because he did not provide straightforward responses and was not willing to answer questions on occasion. He "was somewhat cagey in his testimony," and provided inconsistent testimony. It noted plaintiff "was not inherently believable" and "took very unreasonable positions throughout his testimony." It also found his application for sole legal and physical custody of the parties' son was made in bad faith and determined plaintiff made conclusory and unsupported statements.

In contrast, the court found defendant provided credible testimony. Although she was "somewhat rigid" on the issue of child custody, she "was very thoughtful[,] . . . inherently believable, [and] was willing to answer questions." The court awarded the parties joint legal custody, with defendant as the parent

4

of primary residence and plaintiff the parent of alternate residence with a parenting time schedule. Plaintiff was ordered to pay defendant $1,850 per month in limited durational alimony for eight years and $143 per week in child support.

The family court determined child custody pursuant to N.J.S.A. 9:2-4, alimony pursuant to N.J.S.A. 2A:23-23B, and equitable distribution pursuant to N.J.S.A. 2A:34-23.1, and addressed each of the enumerated factors of each statute in turn. It also determined the base award for child support using the New Jersey Child Support Guidelines worksheet and imputed income to each parent. For the purpose of each support obligation, the court imputed income of $90,000 to plaintiff and $19,219 to defendant. This appeal followed.

II.

Our review of marital dissolutions is limited. Gormley v. Gormley, 462 N.J. Super. 433, 442 (App. Div. 2019). We owe substantial deference to the Family Part's findings of fact due to their "special jurisdiction and expertise in family matters . . . ." Cesare v. Cesare, 154 N.J. 394, 413 (1998). When a marital dissolution relies heavily on testimonial evidence and questions of credibility, "our '[d]eference is especially appropriate' . . . ." Slutsky v. Slutsky,

451 N.J. Super. 332, 344 (App. Div. 2017) (alteration in original) (quoting Cesare, 154 N.J. at 412).

As such, the trial court's decision will remain undisturbed if it is supported by "substantial credible evidence and [is] consistent with applicable law." Lombardi v. Lombardi, 447 N.J. Super. 26, 33 (App. Div. 2016). In other words, we review the trial court's order for an abuse of discretion. Gormley, 462 N.J. Super. at 449. Reversal is warranted only where a family court's factual findings are "so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." S.D. v. M.J.R., 415 N.J. Super. 417, 429 (App. Div. 2010) (quoting Cesare, 154 N.J. at 412). We apply this standard to awards of alimony, child support, equitable distribution, and counsel fees, Lombardi, 447 N.J. Super. at 33, as well as imputed income. Elrom v. Elrom, 439 N.J. Super. 424, 434 (App. Div. 2015). The trial court's legal conclusions, however, are subject to de novo review. Gormley, 462 N.J. Super. at 443.

III.

Defendant argues the court failed to weigh his testimony appropriately and gave too much weight to defendant's status as their son's primary caretaker in awarding custody and parenting time. He contends, based on the totality of

6

the evidence and because the court found it was in his son's best interests to spend more time with plaintiff, the evidence warranted, at minimum, a fifty-fifty custody arrangement.

The trial court properly analyzed the factors in N.J.S.A. 9:2-4(c) and considered the child's best interests. We discern no error in the court's determinations of custody and parenting time because the court properly addressed all the statutory factors. "In custody cases, it is well settled that the court's primary consideration is the best interests of the children." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007). This best interests standard "protects the 'safety, happiness, physical, mental[,] and moral welfare of the child.'" Beck v. Beck, 86 N.J. 480, 497 (1981) (quoting Fantony v. Fantony, 21 N.J. 525, 536 (1956)). In contested custody cases, the court "must reference the pertinent statutory criteria with some specificity," Kinsella v. Kinsella, 150 N.J. 276, 317 (1997) (quoting Terry v. Terry, 270 N.J. Super. 105, 119 (App. Div. 1994)), and "specifically place on the record the factors which justify" the arrangement, N.J.S.A. 9:2-4(f). Judge McDonald appropriately found defendant had been the primary caregiver all of the child's life and consistently made day-to-day decisions in the child's best interests. It also found plaintiff's application for additional parenting time was motivated, in bad faith, to reduce his financial

child support obligation. Plaintiff's argument that the trial court discounted or improperly weighed testimony is not persuasive, given its detailed credibility determinations.

Plaintiff also argues the court did not impute sufficient income to defendant and the record did not support the court's findings with respect to either party's imputed income. Plaintiff maintains the amount imputed to him is not realistic given his medical condition and the loss of his CDL.

"The court may impute income based on the . . . former income at that person's usual or former occupation or the average earnings for that occupation as reported by the New Jersey Department of Labor." Elrom, 439 N.J. Super. at 110. The court must consider and "realistically appraise" the party's educational background, work experience, employment status, earning capacity, and job opportunities in the region when determining how much income, if any, to impute. See Caplan v. Caplan, 182 N.J. 250, 268-69 (2005); Elrom, 439 N.J. Super. at 435; Storey v. Storey, 373 N.J. Super. 464, 474 (App. Div. 2004).

Plaintiff failed to present evidence he was not capable of earning $90,000 per year and the court's imputation is supported by substantial credible evidence in the record. It recognized plaintiff had been employed for many years as a truck driver, earning an annual income of $90,000 in 2020 before earning only

$28,000 in 2021. Current earnings have never been viewed as "the sole criterion [upon which] to establish a party's obligation for support." Weitzman v. Weitzman, 228 N.J. Super. 346, 354 (App. Div. 1988) (quoting Lynn v. Lynn, 165 N.J. Super. 328, 341 (App. Div. 1979)). Instead, "a court 'has every right to appraise realistically [a party's] potential earning power.'" Ibid. (alteration in original) (quoting Mowery v. Mowery, 228 N.J. Super. 92, 102 (App. Div. 1955)).

The court considered and realistically appraised the parties' educational background, work experience, employment status, earning capacity, and job opportunities in the region. Caplan, 182 N.J. at 268-69. It also reviewed the CISs, tax returns, and wage earnings. The court found plaintiff's self-reported condition did not arise until he filed for divorce, and despite plaintiff's employer having provided an opportunity to obtain medical clearance to continue working, he did not make good faith efforts to do so. Therefore, the family court correctly found him voluntarily underemployed and imputed the amount he had been earning as a truck driver.

We likewise find no error in the court's imputation of defendant's income. Defendant never worked outside of the home and had recently and proactively reentered the work force after over a decade as the parties' child's caregiver.

9

Defendant indicated she wanted "to get vocational skills and reach a higher level of employability" but first needed to improve her English. Regarding her full-time status, the record clearly established, and plaintiff does not dispute, that as the primary caregiver, defendant "structured the hours of her work so that she [could] get [their son] to school and pick him up . . . after school." This reasoning supported the imputation of part-time income to her at the time of trial. Elrom, 439 N.J. Super. at 439.

Plaintiff also contends the court erred in declining to allocate the debt owed to his sister as part of equitable distribution. There is no question the court must account for the parties' liabilities as well as their assets when dividing a marital estate. Slutsky, 451 N.J. Super. at 348 (quoting Monte v. Monte, 212 N.J. Super. 557, 567 (App. Div. 1986)). However, a failure to divide the debts equally is not an abuse of discretion. Monte, 212 N.J. Super. at 567.

When a marital debt is owed to a spouse's family member, the claiming spouse has the burden to prove "a bona fide obligation to repay the monies asserted as loans." Slutsky, 451 N.J. Super. at 348 (citing Monte, 212 N.J. Super. at 567-68). Scrutiny of loans from family is warranted because of the potential for inequity, especially in a case where the family member has not intervened to establish or recover the debt. See Monte, 212 N.J. Super. at 568.

10

Here, the court declined to allocate any of the remaining debt to defendant. Plaintiff had the burden of establishing "a bona fide obligation to repay" the alleged family loans. Slutsky, 451 N.J. Super. at 348. Although the court found the money allegedly owed to plaintiff's sister was a marital debt, it found plaintiff failed to prove the money was a bona fide debt that required repayment, noting that no demand for payment had ever been made, which was evidenced by plaintiff's sister's testimony.

To the extent we have not addressed one of plaintiff's arguments, we rely upon the factual and legal findings made by Judge John P. McDonald, or we are satisfied they lack sufficient merit to warrant discussion in our opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-2738-21